Edward T. Hogan,
Acting for and in Behalf of
Ellen L. McLoughlin
vs.
Edward Logan, et al.

Eq. No. 2402.

February 23, 1923.

WALSH, J. Heard on bill, answer and proof.

On June 21, 1927, Minnie Judd, a woman well along in years, made a deed of certain real estate in Newport to her brother, Edward Logan, a resident of County Galway, Ireland, and gave it to her attorney, Robert M. Franklin, Esq., with instructions to record the same after her death.

Minnie Judd had two accounts in the Newport Savings Bank, one opened January 20, 1912, numbered 12492, the other opened November 4, 1921, numbered 30010. Both accounts stood in the name of Minnie Judd until June 28, 1927, on which date both accounts were changed to read "Minnie Judd or Edward Logan or the survivor." The bank never had a signature card of Edward Logan, had never communicated with Logan about the accounts, had never received any communications or requests or orders for payment from the accounts or either of them from Edward Logan. Minnie Judd drew $97.50 from account No. 12492 in September, 1927, and outside of that withdrawal, there were no withdrawals from either account until after the death of Minnie Judd and no deposits have been made in either account af-

ter June 28, 1927, except the entry of dividends by the bank. Mary A. McCoy, a friend of Minnie Judd for 35 years held possession of one of these bank books for eleven years. The other bank book was kept in the possession of the bank officials during the lifetime of Minnie Judd. At the death of Minnie Judd, Mrs. McCoy held one bank book, the bank held the other.

Minnie Judd died August 11, 1929, after being treated at the Newport Hospital for some weeks. During her last illness, she sent for her attorney, Robert M. Franklin, Esq., who, at her request, drew her will which purported to devise and bequeath the real estate described in the deed hereinbefore mention to her brother, Edward Logan, and her sister, Ellen L. McLoughlin, the complainant.

The case presents the following questions for determination:

First: Did the alleged transfer of the real estate to Edward Logan on June 21, 1927, vest a legal and effective title in said Edward Logan?

Second: Did the alleged transfer of the two bank accounts set forth in paragraph five of the bill create a legal and effective joint tenancy between Minnie Judd and Edward Logan?

Third: Was it the intention of Minnie Judd to create a present and vested interest in Edward Logan of said bank accounts on June 28, 1927, the date of the change of accounts in the bank?

The deed to the real estate was left in the hands of Mr. Franklin, grantor's attorney, not for delivery at the time of execution but with instructions to record the same at grantor's death. After the execution of the deed, Minnie Judd retained the exclusive management and control of said real estate, collecting the revenues therefrom and paying expenses thereof, until her death. About one and one-half years after the execution of the deed, Minnie Judd attempted to dispose of this real estate by last will and testament.

Mr. Franklin, grantor's attorney, drew this last will of Minnie Judd and he testified that he mentioned to Minnie Judd the existence of the deed at the time the will was drawn and that Minnie Judd told him at that time that she desired her real estate to go to her brother and sister in equal shares.

Delivery is essential to the validity of a deed. In order to convey title to real estate, it is necessary that the deed thereof shall be delivered to the grantee or to some one for his use. In order to constitute a delivery, the grantor must absolutely part with the possession and control of the instrument.

*Johnson* vs. *Johnson*, 24 R. I. 571;

*Januskewicz* vs. *Kowal*, 47 R. I. 348;

*Taylor* vs. *Taylor*, 90 Atl. 746.

The intent of the grantor is the very essence of delivery. The evidence clearly shows that the grantor did not part with her right and authority to control said real estate. She could call upon Mr. Franklin at any time for the return of the deed to her from the time of its execution up to the time of her death. It seems quite clear, therefore, that it was not the intention of Minnie Judd to convey any interest in this real estate to Edward Logan at the time the deed was executed but it was rather her intention to retain it intact for herself until her decease.

We find, consequently, that the deed of June 21, 1927, from Minnie Judd to Edward Logan purporting to convey the real estate mentioned in the bill of complaint to said Edward Logan, did not vest a legal and effective title thereto in said Edward Logan.

Seven days after the execution of the deed to the real estate (June 28, 1927) Minnie Judd made the change in the two bank books whereby the deposits were transferred from Minnie Judd to "Minnie Judd or Edward Logan or survivor." Minnie Judd retained control of the bank books, leaving one with

Mrs. McCoy and the other at the bank, where the books had been kept previously by her. Upon the return of the book to Mrs. McCoy, after the alleged transfer, Minnie Judd warned Mrs. McCoy to tell no one that she had her bank book. In September, 1927, Edward Logan applied to Minnie Judd for a loan and it is significant that Minnie Judd did not tell him at that time that she had put the accounts in their joint names. We also have the further fact that Minnie Judd attempted to dispose of these alleged joint accounts by her last will and testament.

Though the accounts were placed in the joint names of Minnie Judd and Edward Logan, Minnie Judd retained control of the deposit books and the control over the deposits until her death. In order to create a joint interest in money, the original owner of the fund must be shown to have had an intention to divest himself of the exclusive ownership and control of the money deposited and to vest such ownership and control jointly in himself and another with the attendant right of survivorship. The intention to make a present gift of a joint interest in such deposit may appear in the statement of the deposit or it may be shown by his acts and the attendant circumstances.

*Raftery* vs. *Edward Riley*, 41 R. I. 47.

The evidence in the case strongly supports the contention of complainant that the gift was not complete. There was no actual delivery to the donee or to a third person for him; there was no acceptance by donee; there was ample opportunity for donor to revoke the authority and resume possession of the fund; there is no evidence of a present intention of the donor to make a gift.

*Woonsocket Inst. for Savings* vs. *John J. Heffernan*, 20 R. I. 308.

*Mary Flaherty* vs. *Jeremiah J. O'Connor*, 24 R. I. 587;

*Industrial Trust Co.* vs. *Scanlon*, 26 R. I. 228.

Minnie Judd kept the fact of a deposit in the joint names secret; she did not inform the donee that she had made it; the donee never had the use of the joint fund and there was no actual delivery of the gift to donee during the lifetime of Minnie Judd.

From all the facts and circumstances of the case, it seems to us that the alleged transfer of the two bank accounts did not create a legal and effective joint tenancy in said accounts between Minnie Judd and Edward Logan and that it was not the intention of Minnie Judd to create a present and vested interest in Edward Logan in said accounts on June 28, 1927.

Prayer of complainant granted.

For complainant: Hogan & Hogan.

For respondent: Francis J. O'Brien.